J-S31010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| UHMAR Z. KING | : | |
| | : | |
| Appellant | : | No. 204 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 15, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004189-2023

BEFORE:  PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED OCTOBER 15, 2025**

Uhmar Z. King appeals from the judgment of sentence imposed on November 15, 2024, for his convictions of third-degree murder, aggravated cruelty to animal, and possessing instruments of crime.[1] King asserts the trial court abused its discretion in imposing an aggregate sentence of 16-32 years' incarceration. We affirm.

The trial court set forth the relevant procedural and factual history:

**Procedural History**

On August 12, 2022, the defendant, Uhmar King, was arrested and charged with murder and related offenses. On March 17, 2024, [King] filed a motion to decertify his case from criminal proceedings to juvenile proceedings pursuant to Pa.R.Crim.P. 596. On March 21, 2024, after a hearing, [the trial court] denied the motion. On May 13, 2024, [King] pled guilty to third-degree murder, aggravated cruelty to animals, and possession of an

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 5534(a)(1), and 907(a), respectively.

instrument of crime ("PIC"). Sentencing was deferred for a pre-sentence investigation and mental health evaluation.

On November 15, 2024, [the trial court] sentenced [King] to fifteen to thirty years of imprisonment for third-degree murder and a consecutive one to two years of imprisonment for aggravated cruelty to animals, for a total sentence of sixteen to thirty-two years of imprisonment. No further penalty was imposed for PIC.

On November 23, 2024, [King] filed a timely post-sentence motion, which [the trial court] denied on January 7, 2025.

On January 12, 2025, [King] filed a timely notice of appeal to the Superior Court. On February 1, 2025, [King] filed a statement of matters complained of on appeal.

**Facts**

On May 13, 2024, [King] admitted that on August 12, 2022, when he was sixteen years old, he stabbed and killed his stepmother, sixty-four-year-old Elaine King, on the second floor of her home at 2306 South 20th Street in Philadelphia. The incident happened at approximately 12:15 A.M., when [King] stabbed the decedent multiple times in her neck and chest, suffering a cut to his hands in the process. When he was taken to the hospital to be treated, [King] told the nurse, "It's okay, I will tell her I killed her," that he "has a killer instinct and life is like a game of thrones," and that he "killed his grandmother." Police recovered a drawing at the crime scene that depicts an individual holding a sword with the caption "The Kill Kid."

The medical examiner determined the cause of death to be multiple stab wounds to the neck and chest and the manner of death was ruled a homicide.

[King] also mutilated and tortured the decedent's cat by cutting open its left abdomen and left leg, exposing the cat's intestines.

Trial Court Opinion, 2/27/25, at 1-2 (pagination added for ease of reference;

unnecessary capitalization, record citations, and footnotes omitted).

King raises one issue for our review:

- 2 -

> Whether the sentencing court abused its discretion and erred in ordering a sentence for third degree murder [of] 15 to 30 years['] incarceration and for aggravated cruelty to animals — torture [of] 1 to 2 years['] incarceration, when substantial mitigating circumstances existed including, [King's] age, his remarkable education and work history, his absence of juvenile convictions, his positive prison adjustment and good conduct, his solid family and community support (i.e. teachers and peers), his acceptance of responsibility, his remorsefulness, his history of marijuana abuse, the substance-induced psychotic episode at the time of the killing, and [King's] rehabilitative needs at the time of sentencing?

Appellant's Brief, at 9 (unnecessary capitalization and citations omitted).

This is a challenge to the discretionary aspects of sentencing, which "[does] not entitle [King] to review as of right."[2] **Commonwealth v. Verma**, 334 A.3d 941, 946 (Pa. Super. 2025) (citation omitted). Before we can address the merits of King's claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

**Id.** (citation and brackets omitted).

King filed a timely appeal, preserved his issue in a post-sentence motion seeking a modification of his sentence, and included a Rule 2119(f) statement

_____

[2] We note that King pled without an agreement as to the sentence, therefore he is permitted to challenge the discretionary aspects of the sentence. **See Commonwealth v. Alameda**, 339 A.3d 504, 511 (Pa. Super. 2025) (noting that an appellant may challenge the discretionary aspects of the sentence where there are no sentencing restrictions as part of the guilty plea agreement).

- 3 -

in his brief. We therefore turn to the final factor and decide whether King raised a substantial question.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Id.*** (citations and quotation marks omitted).

King argues that, although his sentence is within the standard range of the guidelines, it is manifestly excessive. ***See*** Appellant's Brief, at 20. King asserts the trial court failed to consider mitigating factors and therefore imposed a grossly disproportionate sentence. ***See id.*** at 23. The mitigating factors King claims the trial court failed to consider are his "age, acceptance of responsibility, remorse, his drug abuse, absence of adult criminal convictions and his rehabilitative needs[.]" ***Id.*** at 20-21.

> This Court has explained:

> [T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.

> However, prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court "failed to consider" or "failed to adequately consider" sentencing factors has been less than a model of clarity and consistency.

> ***

>> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to

whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

**Commonwealth v. Swope**, 123 A.3d 333, 339-40 (Pa. Super. 2015) (citations and some quotation marks omitted).

After **Swope**, this Court has continued to find an appellant's "assertion that the trial court failed to adequately consider mitigating factors, rendering his sentence excessive, raises a substantial question." **Alameda**, 339 A.3d at 512 (citation omitted). We therefore find King raised a substantial question and address the merits of his claim.

We reiterate our well-established standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A.] § 9781(c) and (d). Subsection 9781(c) provides[, in relevant part:]

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

- 5 -

> ***
>
>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]
>
> ***
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> 42 Pa.C.S.[A.] § 9781(c).
>
> In reviewing the record, we consider:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation (PSI).
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S.[A.] § 9781(d).

When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[A.] § 9721(b), including the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the

- 6 -

record as a whole must reflect the sentencing court's consideration of the facts of the crime and the character of the offender.

Additionally, the trial court must consider the sentencing guidelines. However, where the trial court is informed by a PSI [], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. In conducting appellate review, this Court cannot reweigh sentencing factors and impose judgment in place of [the] sentencing court where [the sentencing] court was fully aware of all mitigating factors.

*Verma*, 334 A.3d at 946-47 (brackets, quotation marks, and some citations omitted).

King asserts the trial court failed to consider that "[i]t was the prolonged nature of the marijuana use by [King], a juvenile, that was responsible for the violence that occurred here." Appellant's Brief, at 30. King believes his marijuana use caused psychosis, which then caused him to stab his stepmother and her cat multiple times, resulting in both their deaths. *See id.* King argues the trial court should have placed more weight on these facts in determining his sentence. *See id.* at 32-33. King further contends the trial court failed to consider his age, lack of prior adjudications, family and community support, and decision to plead guilty to spare the victim's family a public trial. *See id.* at 33-34.

In essence, King is asking this Court to reweigh the factors the trial court considered in imposing its sentence. Again, we emphasize, "this Court cannot reweigh sentencing factors and impose judgment in place of [the] sentencing court where [the sentencing] court was fully aware of all mitigating factors." *Verma*, 334 A.3d at 947 (citation, internal quotation marks, and brackets omitted). The trial court here had a PSI, mental health report, and specifically acknowledged the sentencing factors it considered. *See* N.T. Sentencing, 11/15/24, at 5-6. The court heard about King's family history, including that his stepmother obtained full legal and physical custody over him after she divorced his father. *See id.* at 15. The court noted that King had no prior legal involvement, that it reviewed counsel's sentencing memorandum highlighting what it believed to be mitigating factors, and heard from multiple defense witnesses, including King himself. *See id.* at 7-8, 26-52, 61-62.

But the court also considered that this was "a gory killing." *Id.* at 7. The court considered the mental health report that did "not shed much light on [King's] behavior [the night of the homicide]." *Id.* at 8. Further, the court heard from the victim's family who described their suffering in the loss of Ms. King. *See id.* at 10-23. In balancing the sentencing factors, the court noted: "I have considered your plea. I have considered your explanation, but it is crucial that this judge, and this court, maintains the safety of the environment in this case. … [T]he lack of explanation for the particular plea on the aggravated cruelty to the animal [is] an additional concern." *Id.* at 62-63.

- 8 -

Furthermore, the trial court gave a detailed explanation for its sentence in its opinion:

> After reviewing the presentence report, [King's] mental health report, as well as materials from [King's] decertification hearing, including letters from teachers at the Workshop School, friends of [King], and board members at the Brotha Hood Foundation [(]a basketball mentoring program for juveniles in the criminal justice system[)], [the trial court] imposed a fair and appropriate sentence[,] considering that [King] brutally stabbed his stepmother multiple times and gruesomely disemboweled her cat for no apparent reason. [The trial court] gave significant consideration to [King's] age at the time of the offense. [The trial court] sentenced [King] to an aggregate term of sixteen to thirty-two years of imprisonment after considering the seriousness of the crimes, the protection of the public, the sentencing guidelines, as well as [King's] age, mental health, substance abuse, and his potential for rehabilitation. No explanation for [King's] behavior was presented in [his] medical and mental health reports provided to [the trial court] for either his decertification hearing or his sentencing.
>
> ***
>
> In formulating its sentence, [the trial court] considered all the mitigation materials submitted by [King], including an extensive medical evaluation conducted by Dr. Kirk Heilbrun, Ph.D., and materials that [King] submitted at the time of his decertification hearing. [The trial court] reviewed [King's] school and medical records and heard character testimony from individuals who met [King] after he was incarcerated. They spoke of [King's] character, maturity, and newfound connection to religion.
>
> [The trial court] heard from the decedent's brother, Steven Jefferson, who shared the profound sense of despair and sadness that this incident has caused him. Mr. Jefferson and his family are burdened with grief, anger, trauma, and pain as a result of this gruesome murder. He spoke of the decedent's kind, hard-working, and giving nature, contributing to her church community as a Sunday School teacher. Following her divorce from [King's] father, the decedent acquired full custody of [King] and cared for him, investing immense time and energy into raising a child who was not hers biologically. After [King's] eighth grade graduation, the

decedent was recognized by his school as being "the most involved parent[,"] earning her roses and a certificate. She battled cancer on two occasions, undergoing radiation and chemotherapy, and she was deeply loved by her family and community.

Nicole Gindrew, the decedent's daughter, had her life forever changed following this incident. She looked to her mother as her best friend and counselor, someone she turned to in difficult times and in joyful times. She is now weary of trusting people, even those close to her, after [King's] actions. She will be grieving this loss for the rest of her life.

After weighing all the relevant factors, [the trial court] arrived at a well-reasoned and just sentence. Any less of a sentence would denigrate the seriousness of the offenses, the numerous people affected by these crimes, and the danger that [King] poses to the public.

Trial Court Opinion, 2/27/25, at 4-6 (pagination added for ease of reference).

After a thorough review of the record, it is clear the trial court did not abuse its discretion in fashioning its sentence. The trial court considered the mitigating circumstances King argued but found they did not warrant a lesser sentence. King has failed to present a meritorious argument that the sentence is clearly unreasonable given the facts of the case. *See Verma*, 334 A.3d at 946-47.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025

- 10 -